IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WILLIAM LARSON, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO. 3:11-cv-603-JAG |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

William Larson ("Plaintiff") is 57 years old and has previously worked as drywall worker. He alleges that he suffered from a ruptured disc, bullet in his spine, herniated disc and neck fusion. On July 23, 2008, Plaintiff applied for Social Security Disability ("DIB") with an onset date of May 1, 2007 under the Social Security Act (the "Act"). Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for DIB benefits. The Appeals Council subsequently denied Plaintiff's request for review on July 15, 2011.

Plaintiff now challenges the ALJ's denial of DIB benefits, asserting that the ALJ improperly assessed Plaintiff's credibility and incorrectly characterized his education under the Medical Vocational Guidelines ("Grids"). (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 21-26.) In his decision, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that he was limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 24.) In doing so, the ALJ noted

that, while Plaintiff's medical records indicated a history of back pain, Plaintiff's activities and medical care were not consistent with his allegations of pain. (R. at 25-26.) Additionally, the ALJ determined that an occupational job base of work existed for Plaintiff's RFC under the Grids. (R. at 28.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 10) be DENIED; that Defendant's motion for summary judgment (ECF No. 11) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Because Plaintiff complains that the ALJ erred when he assessed Plaintiff's credibility with regard to his back pain and determined that there were jobs in the national economy that Plaintiff could perform based on the Grids, Plaintiff's work history, medical history and testimony are summarized below.

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

A. **Plaintiff's Education and Work History**

In a Disability Report, Plaintiff indicated that he completed the 12th grade and did not attend special education classes. (R. at 141.) However, at a hearing before the ALJ, Plaintiff testified that he attended special education classes and had the equivalent of an eighth grade education. (R. at 36.) He also characterized himself as self-taught. (R. at 36.) Plaintiff's last position was as a front-end loader driver. (R. at 39.) He also worked as a construction worker from 1997 through 2001, installing drywall. (R. at 39, 137.)

B. **Plaintiff's Medical History**

Most of the medical records from Plaintiff's primary care physician, Lerla G. Joseph, M.D., from Charles City Medical Group are illegible. (*See* R. at 224-53, 283-88, 436-42.) Regardless, Dr. Joseph's records indicate near-monthly visits from July 2006 through November 2009 by Plaintiff as well as prescriptions and refills for Lasix, Percocet, Flexeril, Metformin and Oxytocin. (*See* R. at 224-53, 283-88, 436-42.) These patient notes also indicate that Plaintiff fell down a flight of stairs, was in a lot of pain, could not sit long and underwent injections for his back pain. (R. at 232, 237, 236.) During his visits, Dr. Joseph diagnosed Plaintiff with diabetes, back pain, high cholesterol, hypertension and seizures. (R. at 250.)

On February 14, 2007, Plaintiff was evaluated for his carpel tunnel by Jonathan E. Isaacs, M.D., an orthopedic surgeon. (R. at 214-15.) Dr. Isaacs noted that Plaintiff had a bullet in his spine from a gunshot, had chronic neck pain as well as diabetes and became nauseous when his pain increased. (R. at 214.) Plaintiff was diagnosed with severe right carpal tunnel and moderate left carpal tunnel. (R. at 214.) Dr. Isaacs recommended a carpal tunnel release surgery on Plaintiff's right hand, which he performed on August 11, 2008. (R. at 211-12, 215.)

On May 30, 2007, Plaintiff visited MCV Hospital and complained of sharp, constant back pain rated ten out of ten that had been existent for two weeks and that had rendered walking difficult. (R. at 488.) An x-ray of Plaintiff's spine revealed degenerative disc disease. (R. at 490.) A comparison of a MRI taken a few years earlier indicated that, while Plaintiff had mild spinal stenosis secondary to mild disc bulge and facet hypertrophy, Plaintiff's condition had not significantly changed. (R. at 491-92.) At discharge, Plaintiff was diagnosed with lumbar radiculopathy (also known as sciatica). (R. at 472-73.)

In August 2008, Plaintiff had his right inguinal hernia repaired. (R. at 295.) In an admission assessment to MCV Hospital, a nurse noted that Plaintiff had a limited range of motion, independent activities of daily living ("ADLs"), no ambulatory aid, normal gait and a history of falling. (R. at 320.) While Plaintiff complained of an eight out of ten pain in his back and a five out of ten pain in his neck on August 11, 2008, a few weeks later Plaintiff rated his pain as a four out of ten only in his testicular area. (R. at 332-33.)

In August 2009, Plaintiff visited MCV Hospital after sustaining head and chest injuries. (R. at 526-31.) An x-ray of Plaintiff's cervical spine was generally unremarkable. (*See* R. at 532.) A CT scan of Plaintiff's spine revealed significant facet hypertrophy.[2] (R. at 533-34.)

C.   **The Opinions of the Non-treating State Agency Doctors**

On September 24, 2008, non-treating state agency physician James Wickham, M.D., completed a Physical RFC Assessment. (R. at 271-76.) Dr. Wickham opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for six hours throughout an eight-hour workday, sit for six hours throughout an eight-hour workday and push or pull objects. (R. at 272.) Dr. Wickham did not cite any other limitations in Plaintiff's RFC. (R. at 273-75.)

---

[2] Facet hypertrophy is "the enlargement or overgrowth" of the joints. *See Dorland's Illustrated Medical Dictionary* 668, 898 (Ed. 32 2011).

4

He also noted that Plaintiff "provided inconsistent information regarding his daily activities" and that Plaintiff's pain treatment had been conservative in nature. (R. at 276.) On January 27, 2009, Robert Chaplin, M.D., affirmed Plaintiff's RFC assessment of light work by Dr. Wickham. (R. at 368.)

Dr. Alan Entin completed a Psychiatric Review Technique on January 27, 2009. (R. at 355-67.) Dr. Entin indicated that Plaintiff had a non-severe anxiety related disorder with no degree of limitations. (R. at 355, 365.) Because Plaintiff was independent, could keep his doctor appointments, visited only his primary care physician, drove and socialized without limitations, Dr. Entin opined that Plaintiff's anxiety was non-severe. (R. at 367.)

### D. Plaintiff's Activities of Daily Living

On July 23, 2008, Plaintiff met with a Social Security Administration ("SSA") employee, who noted that Plaintiff had "a difficult time sitting for the interview and kept leaning to the side as he was in pain." (R. at 133.) On August 22, 2008, Plaintiff completed a Disability Report. (R. at 135-42.) In it, he wrote that he was in constant pain, could not lift over five pounds and was drowsy as a result of his medications. (R. at 136.)

On September 5, 2008, Plaintiff completed a Pain Questionnaire. (R. at 156-57.) Plaintiff marked that he had stabbing and burning pain "every day, all day" that spanned from his neck down his back, legs, shoulders, arms and wrists. (R. at 156.) He also indicated he had headaches and migraines. (R. at 156.) Plaintiff noted that his pain kept him from bending, squatting, stooping, reaching, standing, sitting and lying down. (R. at 157.) He claimed he had the pain since 1998; while medication helped, it did not fully alleviate the pain and made him drowsy. (R. at 157.)

5

Plaintiff filled out a Function Report on September 5, 2008. (R. at 161-68.) He indicated that he alternated between sitting and lying down all day, due to his pain. (R. at 161.) Plaintiff noted that he needed help putting on his pants and shoes, bathing and using the toilet. (R. at 162.) He wrote that he was "in too much pain to prepare a meal." (R. at 163.) Plaintiff indicated that he tried to leave the house a few times a week, but had fallen on multiple occasions. (R. at 164.) Plaintiff stopped shopping and could not pay bills. (R. at 164.) He noted that he could only read or watch television and regularly left his house only to visit his doctor. (R. at 165.) Friends visited Plaintiff a few times a week. (R. at 165.) Plaintiff indicated that he could walk about 50 feet before stopping to rest. (R. at 166.) He noted that he did not handle stress well, because he was in constant pain. (R. at 167.)

### E.     Plaintiff's Testimony

On December 14, 2009, Plaintiff appeared at a hearing before the ALJ. (R. at 31-48.) Plaintiff explained that he occasionally had shortness of breath, which he thought was a result of anxiety and stress, but had yet to visit a psychiatrist. (R. at 45.) Although he had been put on medication for anxiety or depression, he "had a bad reaction to anti-depressants." (R. at 45.)

Plaintiff stated that he visited his primary care physician, Dr. Joseph, every month. (R. at 33-34.) Plaintiff testified that since May 2007 he had two hernia surgeries and a carpal tunnel surgery. (R. at 39.) Plaintiff explained that he had chronic daily pain in his spine and right shoulder. (R. at 39-40.) He had been taking prescription pain medication every day, but occasionally attempted to handle his pain without the medication. (R. at 40.) Plaintiff testified that he received injections specifically for the pain and that those injections helped relieve his pain. (R. at 40.) He stated he had no side effects from his medication. (R. at 44.)

Plaintiff testified that he tried to exercise every day. He stated that he could safely lift or carry less than 10 pounds, stand for no more than 15-20 minutes at a time, sit for 30-90 minutes at a time and walk 3-40 feet without stopping. (R. at 41.) Although Plaintiff had been prescribed a cane, he refused to use it because he tripped. (R. at 42.) He could move all of his fingers, write with his left hand and raise one arm above his hand. (R. at 42.) Plaintiff testified that he slept "[a] couple hours here and there" at night and napped about 30 minutes during the day. (R. at 42-43.)

Plaintiff did not clean, perform yard work, have hobbies, socialize or attend routine activities outside the home. (R. at 43.) He could prepare food in the microwave and occasionally shop for groceries. (R. at 43.) Plaintiff testified that he occasionally had help getting in and out of the tub. (R. at 44.) He explained that he lived with three other people in a multiple-level house and slept in the upstairs bedroom. (R. at 35-36.) Plaintiff did not have a driver's license at the time of the hearing, but had a previous conviction for DUI and an issue with a county sticker. (R. at 36-37.)

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI on July 23, 2008, claiming disability due to a ruptured disc, bullet in his spine, herniated disc and neck fusion with an alleged onset date of May 1, 2007. (R. at 109-17, 136.) The SSA denied Plaintiff's claims initially and on reconsideration.[3] (R. at 50-51.) On December 14, 2009, Plaintiff testified before an ALJ. (R. at 20.) On February 23, 2008, the ALJ issued a decision finding that Plaintiff was not under a disability. (R. at 20-

---

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

28.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on July 15, 2011, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (*See* R. at 1-3.)

### III. QUESTIONS PRESENTED

Was the Commissioner's assessment of Plaintiff's credibility supported by substantial evidence in the record and the application of the correct legal standard?

Did the Commissioner properly use the Medical Vocational Guidelines to determine that Plaintiff was not disabled under the Act?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly

8

detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[5] based on an assessment of the claimant's residual functional capacity ("RFC")[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 1, 2007 and was insured through December 31, 2009. (R. at 22.) At step two, the ALJ determined that Plaintiff was severely impaired from degenerative disc disease. (R. at 22.) The ALJ found that Plaintiff's alleged anxiety did not appear to be an ongoing diagnosis, as Plaintiff was not taking any medications for his anxiety. (R. at 23.)

At step three, the ALJ concluded that Plaintiff's malady did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 24.) The ALJ noted that Section 1.04 requires a disorder, such as degenerative disc disease, that resulted in the compromise of a nerve

root. (R. at 24.) The ALJ explained that the necessary objective findings did not exist in the medical evidence. (R. at 24.)

The ALJ then determined that Plaintiff had the RFC to perform light work, except that he was limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 24.) The ALJ noted that the medical evidence demonstrated Plaintiff's history of back pain and carpal tunnel syndrome. (R. at 25.) The ALJ indicated that many of Dr. Joseph's notes were illegible, but that Plaintiff did complain of back pain and was prescribed medications. (R. at 25.) Plaintiff also visited the emergency room and complained of back pain. (R. at 25.) During that visit, a CT of Plaintiff's spine revealed degenerative disc disease of the lumbar spine and a bullet fragment in the L3 vertebral body. (R. at 25.) Additionally, an MRI scan of Plaintiff's back demonstrated mild spinal stenosis and mild facet hypertrophy. (R. at 25.) Plaintiff returned to Dr. Joseph for pain medications. (R. at 25.)

The ALJ determined that Plaintiff's allegations of chronic daily pain in his back were not entirely consistent with his daily activities or the medical evidence. (R. at 26.) For example, Plaintiff indicated that the stabbing and burning pain in his back affected his ability to walk, stand, lift, squat, bend, stand, reach, walk, sit, kneel, use his hands, climb stairs, remember things, concentrate, complete tasks, follow instructions and understand. (R. at 26.) However, Plaintiff could take care of his personal needs, prepare his meals, walk a few times a week, sleep in his bedroom on the second floor, visit with friends and follow written instructions fairly well. (R. at 26.)

Continuing, the ALJ noted that Plaintiff's treatment had been conservative in nature, as he did not always take prescription pain medication. (R. at 26.) But when he did take the pain medications, his pain was relieved. (R. at 26.) Additionally, Plaintiff had not been

recommended to have surgery performed on his spine, nor had he regularly seen any specialists for his back. (R. at 26.) The ALJ then assigned the opinions of the non-treating state agency physicians limited weight, because they opined that Plaintiff could perform the full range of light work. (R. at 27.) Instead, the ALJ determined that Plaintiff could perform light work with certain postural limitations. (R. at 27.)

At step four, the ALJ assessed that Plaintiff was unable to perform his past relevant work as a drywall worker. (R. at 27.) Next, considering Plaintiff's age, high school education, ability to speak English, work history and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 27-28.) More specifically, the ALJ determined that Plaintiff's additional limitations to his RFC had little or no effect on the "occupational job base of work at the light exertional level." (R. at 28.) The ALJ therefore found that Plaintiff had not been under a disability under the Act from May 1, 2007. (R. at 28.)

Plaintiff asserts that the ALJ erroneously assessed his credibility by improperly characterizing his ADLs. (Pl.'s Mem. at 21-25.) Plaintiff also argues that the ALJ erroneously assessed his disability under the Grids, because Plaintiff was allegedly in special education classes and therefore could not enter into skilled work. (Pl.'s Mem. at 26.) Defendant disagrees, arguing that substantial evidence supported the ALJ's decision. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 9-14.)

### A. The ALJ's assessment of Plaintiff's credibility was supported by substantial evidence.

Plaintiff argues that substantial evidence existed in the record to support Plaintiff's complaints of pain and physical limitations. (Pl.'s Mem. at 21.) After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at

13

step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig v. Charter*, 76 F.3d 585, 594 (4th Cir. 1996); *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-3. In doing so, the ALJ must consider all the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (the "RFC assessment must be based on all of the relevant evidence in the case record"). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

Plaintiff specifically takes umbrage with the ALJ's assessment of his ADLs and conducts a paragraph-by-paragraph explanation of his ADLs. (Pl.'s Mem. at 22-24.) Additionally, Plaintiff explains that his medical records provide sufficient evidence of his allegations of pain, as did an SSA employee's documentation of Plaintiff's difficulty sitting for an interview due to pain. (R. at 25.) The Commissioner asserts that Plaintiff's oral and written testimony was

inconsistent and, therefore, the ALJ's credibility determination should be given deference. (Def.'s Mem. at 9-12.)

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Here, Plaintiff's written and oral statements are inconsistent. In August 22, 2008, Plaintiff wrote that he could not lift over five pounds, but at the hearing Plaintiff testified that he could safely lift or carry less than 10 pounds. (R. at 41, 136.) Although Plaintiff wrote that he was drowsy as a result of his medications, he testified that he had no side effects from his medications. (R. at 44, 136.) While Plaintiff testified that he occasionally attempted to handle his pain without medication and that injections helped relieve his pain, only a year earlier Plaintiff wrote that his medication did not fully alleviate his pain. (R. at 40, 156-57.)

Plaintiff explained that he suffered from stabbing and burning pain "every day, all day" that kept him from bending, squatting, stooping, reaching, standing, sitting and lying down. (R. at 156-57.) The ALJ determined that Plaintiff had the RFC to perform light work, except that he was limited to only occasionally climbing, balancing, stooping, reaching, kneeling, crouching and crawling. (R. at 24.) This RFC was consistent with Plaintiff's admissions that his bedroom was on the second floor of his house (which therefore required him to climb stairs at least once a

day), he attempted to exercise every day and could prepare his meals in the microwave as well as occasionally shop for groceries. (R. at 35-36, 41, 43.)

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591. In this case, while the limited medical evidence documented Plaintiff's complaints of back pain, the substantial evidence indicated conservative pain treatment with no recommendation of surgeries or treatment to alleviate his back pain, other than prescription medication. Because substantial evidence supported the ALJ's assessment of Plaintiff's credibility, the ALJ did not err when determining Plaintiff's RFC.

### B. The ALJ properly used the Medical Vocational Guidelines to determine Plaintiff's level of disability.

Once an ALJ determines a claimant's RFC, he may use the Medical Vocational Guidelines ("Grids") to determine the claimant's level of disability and potential for employment. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The Grids categorize jobs by their physical-exertion requirements,[7] namely, sedentary,[8] light,[9] medium, heavy, and very

---

[7] A claimant's exertional limitations determine the proper exertional level for the claimant's situation. *See* SSR 83-10. An exertional limitation is an impairment-caused limitation which affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying pushing, and pulling. SSR 83-10.

[8] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

16

heavy. *See* SSR 83-10. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels (Rule 204.00). SSR 83-10; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on the claimant's RFC, the ALJ must first determine which table to apply. Next, based on the claimant's age, education, and previous work experience, the Regulations direct a finding of "disabled" or "not disabled." Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits.[10] *Walker*, 889 F.2d at 49; *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989).

Plaintiff's sole complaint with the ALJ's use of the Grids was that, because he testified that he was enrolled in special education classes and had difficulty reading and writing, the ALJ should have assessed that he had "no education that would allow him to enter into skilled work." (Pl.'s Mem. at 26.) However, in a Disability Report, Plaintiff indicated that he completed the 12th grade and did not attend special education classes. (R. at 141.) Thus, Plaintiff's written and oral statements are contradictory. The record did not contain any evidence of Plaintiff's alleged special education classes, save his contradictory testimony at the ALJ's hearing. Because there is conflicting testimony on the subject and this Court must give great deference to the ALJ's assessment of Plaintiff's credibility, *Eldeco, Inc.*, 132 F.3d at 1011, the ALJ did not err in finding

---

[9] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[10] Utilization of the Grids is predicated on the claimant suffering from exertional limitations — the Grids are not applicable if the claimant suffers solely from nonexertional impairments. 20 C.F.R. § 404.1569a; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments"). The reason for this rule is that nonexertional limitations may limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level.

that Plaintiff had at least a high school education. The Court therefore recommends an affirmation of the Commissioner's determination that Plaintiff was not disabled under the Act.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (ECF No. 10) be DENIED; that Defendant's motion for summary judgment (ECF No. 11) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable John A. Gibney, Jr., and to all counsel of record.

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: August 14, 2012